# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KENNEY R. RIGMAIDEN** | : | **DOCKET NO. 04-2153** |
| **VS.** | : | **JUDGE MINALDI** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is a complaint for judicial review of the Commissioner's decision to terminate plaintiff's disability insurance benefits. The matter has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Upon review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned finds that the Commissioner's decision is supported by substantial evidence in the record and is consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

Kenney Rigmaiden filed the instant application for Supplemental Security Income payments on March 12, 1998. (Tr. 15). He alleged disability since July 28, 1995, due to skin conditions, a head injury, and a loss of concentration. (Tr. 96). The claim was denied initially and upon reconsideration. (Tr. 45-46, 48). Rigmaiden requested and received a July 13, 2000, hearing before an administrative law judge (ALJ). (*See*, Tr. 52). However, by decision dated September 26, 2000, the ALJ denied benefits, finding at Step Four of the sequential evaluation

process, that Rigmaiden was able to return to past relevant work. (Tr. 52-58). Rigmaiden appealed the unfavorable decision to the Appeals Council. Yet, on February 22, 2001, the Appeals Council denied Rigmaiden's request for review. (Tr. 66-67). Accordingly, Rigmaiden sought review before this court. (*See*, Civil Action Number 01-0562). Pursuant to the Commissioner's motion, the matter was remanded on April 24, 2002 for further administrative proceedings in accordance with the fourth sentence of 42 U.S.C. § 405(g). (Tr. 63). Upon remand, plaintiff's work history and mental capacity were to be reevaluated, and a determination made as to whether there was any evidence that plaintiff was mentally retarded prior to age 22. *Id*.

On July 9, 2002, the Appeals Council remanded the case to an ALJ with instructions in accordance with the court's judgment. (Tr. 68-69). A new hearing was held before an ALJ on April 16, 2003. (Tr. 156-190). However, in a December 19, 2003, written decision, the ALJ determined that Rigmaiden was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 15-24).[1] Rigmaiden appealed the unfavorable decision to the Appeals Council. Yet, on July 22, 2004, the Appeals Council denied Rigmaiden's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

Rigmaiden now seeks to have this court review the denial of benefits. He alleges the

---

[1] During the pendency of the instant application, plaintiff filed his eighth application for Supplemental Security Income payments on February 28, 2001. (Tr. 29). By decision dated April 24, 2002, an ALJ found that plaintiff met Listing 12.05(C), and thus determined that he was disabled under the Act. (Tr. 29-32). Plaintiff began receiving benefits on that claim. (Def. Resp. to Court Order). However, the instant ALJ's December 19, 2003, decision denying benefits effectively reopened and terminated the favorable April 24, 2002, decision. *Id*. Plaintiff's SSI benefits were discontinued in August 2004. *Id*.

following errors:

> (1) the ALJ misapplied Listing § 12.00;
>
> (2) the ALJ improperly discounted Dr. Whiteman's report that plaintiff suffered from severe depression and anxious features; and
>
> (3) the ALJ's Step Five determination that there are significant numbers of alternative jobs in the national economy is not supported by substantial evidence.[2]

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-

---

[2] The instant review covers the period from March 12, 1998, (the alleged disability onset date) through December 19, 2003 (the date of the ALJ's current decision). *See*, *Muse v. Sullivan*, 925 F.2d 785, 787 (5th Cir. 1991).

344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issue 1:**

The ALJ found at Step Two of the sequential evaluation process that Rigmaiden suffered from severe impairments of borderline intellectual functioning, spinal stenosis, and status post laminectomy and diskectomy at L5-S1. (Tr. 19, 23). However, the impairments were not severe enough to meet or medically equal any one of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id.*

4

In his decision, the ALJ specifically considered Listing 12.05(C).[3] (Tr. 19-20). However, he determined that plaintiff was not mentally retarded, and thus did not meet the listing. *Id.*[4] Plaintiff challenges this determination. Plaintiff contends that his IQ scores support a diagnosis of mental retardation. Indeed in 2000 and 2001, Dr. Whiteman diagnosed plaintiff as suffering from mild mental retardation. (Tr. 87-88, 128-130). However, the ALJ relied instead on Dr. Dilks' opinion that plaintiff suffered from borderline intellectual functioning. (Tr. 20-21, 91-94).[5] Of course, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)(citation omitted).

Dr. Dilks administered the WAIS-III to plaintiff who obtained a verbal IQ of 70. (Tr. 93-

---

[3] The listing provides in relevant part:
> 12.05. Mental Retardation: Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Section 12.05C of Appendix 1 Section 12.05.

[4] The ALJ conceded that plaintiff suffered a physical impairment that imposed an additional and significant work related limitation of function. (Tr. 20).

[5] Borderline intelligence is not a non-exertional impairment. *Arce v. Barnhart*, No. 05-50935 (5th Cir. 6/22/06)(unpubl.). Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id.* Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled principle of law. *See*, FRAP 47.5.1.

94). However, Dr. Dilks concluded that these scores indicated borderline intellectual functioning, rather than mental retardation. *Id.* This diagnosis accords with the *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed. 1994)(DS-IV), which recognizes a margin of error of up to 5 points when assessing IQ. DSM-IV at pgs. 39-40.

Furthermore, to meet listing 12.05(C), the claimant must also suffer deficits in adaptive functioning initially manifested before age 22. *Arce, supra* (citing, 20 C.F.R. pt. 404, subpt. P, app.1, § 12.05. Here, the ALJ determined that plaintiff's current activities did not indicate any deficits in adaptive functioning prior to age 22. (Tr. 20). In this regard, Dr. Dilks noted Rigmaiden's extensive daily activities including: tending to his personal hygiene, dressing himself, driving a car, cooking, washing dishes, doing laundry, sweeping, vacuuming, mopping, watching tv, using a telephone, shopping at Wal-Mart, attending church, walking up to one block, playing cards with his friends, going out with his brothers, and visiting friends and family. (Tr. 94).

In sum, there is substantial evidence to support the ALJ's determination that plaintiff was not mentally retarded and did not meet Listing 12.05(C). *See, Arce, supra.*[6]

**Issue 2:**

The ALJ determined that Rigmaiden retained the residual functional capacity to perform very simple light work with moderate limitations in concentration, persistence, and pace. (Tr. 21,

---

[6] In support of his argument, plaintiff cites *Livings v. Barnhart*, C. A. No. 03-1755 (W.D. La. 01/19/05) and *Leblanc v. Social Security Administration*, C.A. No. 02-1878 (W.D. La. 03/02/04). Here, in contrast,, there is ample evidence that plaintiff did not suffer deficits in adaptive functioning prior to age 22. *See*, discussion, *supra*.

23).[7] Plaintiff argues that the ALJ improperly discounted Dr. Whiteman's opinion that plaintiff suffered depression with anxious features. In his decision, the ALJ stated that

> [i]n virtually every case the undersigned has had with the claimant's representative, the representative has referred the claimant to Dr. Whitehead [sic] who has provided an unusually liberal assessment. The assessments have always been, as in this case, contrary to the weight of the evidence. Therefore, the undersigned finds that Dr. Whitehead's [sic] assessment is not accurate and should be given little, if any, weight.

(Tr. 20).

Plaintiff contends that the ALJ's comments "reek of bias." However, the ALJ's statement stems from the ALJ's prior experience with the claimant's representative and Dr. Whiteman. In any event, the ALJ stated that Dr. Whiteman's assessment was against the weight of the evidence *in this case.* (Tr. 20). In contrast to Dr. Whiteman, Dr. Dilks diagnosed polysubstance dependent depression in full remission. (Tr. 91-94).[8] The ALJ, as is his prerogative, relied on Dr. Dilks'

---

[7] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[8] Dilks noted that Rigmaiden had a long history of drug and alcohol dependency. *Id.* Rigmaiden had used angel dust, heroin, marijuana, amphetamines, intravenous cocaine, crack, xanax, mushrooms, and embalming fluid. *Id.*

assessment.[9] Dilks further observed that Rigmaiden's attention, concentration, pace, and persistence were fair. *Id*. He noted that at the time of the evaluation, Rigmaiden could understand instructions, relate to others, sustain attention, tolerate stress, and sustain activities. *Id*. He did not appear to need close supervision. *Id*. Dilks opined that if Rigmaiden entered recovery, he could acquire some form of gainful employment. *Id*.

In sum, the ALJ's residual functional capacity determination is supported by substantial evidence.[10]

**Issue 3**:

At Step Four of the sequential evaluation process, the ALJ determined that Rigmaiden had no past relevant work. (Tr. 21, 23). Accordingly, the ALJ proceeded to Step Five. At this step, the ALJ determined that plaintiff was a younger individual, with a marginal education and no transferable skills. (Tr. 22-23).[11] Using the medical-vocational guidelines as a framework, the ALJ concluded that Rigmaiden was not disabled pursuant to Rule 202.17. *Id*. However, because Rigmaiden was unable to perform the full range of light work, the ALJ relied on the testimony of a vocational expert ("VE") who opined that plaintiff would be capable of making an adjustment to perform other jobs that exist in significant numbers in the national economy. (Tr.

---

[9] Again, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore, supra*.

[10] Plaintiff does not challenge the ALJ's physical residual functional capacity assessment. In any event, that determination is supported by substantial evidence. (*See*, Tr. 135-137).

[11] Rigmaiden was 47 years old at time of hearing. (Tr. 161).

16).[12]

Plaintiff contends that he did not possess the requisite General Education Development (GED) level to perform the jobs listed by the VE. In *Carey v. Apfel*, the Fifth Circuit held that when there is an implied or indirect conflict between the vocational expert's testimony and the DOT, the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Here, plaintiff's representative questioned the VE regarding the potential inconsistency between the GED requirements for the identified jobs, and plaintiff's professed skills level. (*See*, Tr. 181-186). However, the VE explained that a GED level of one was the minimum level for any job. (Tr. 184). He further explained that if a given GED level called for the worker to read 2,500 words, that means that the worker need only read up to 2,500 words, and that he need read as little as two words. (Tr. 185).

As recognized by the Fifth Circuit:

> [t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.

*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

Here, the record reflects an adequate basis for deferring to the expertise of the VE. *Carey, supra.*

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Rigmaiden was not disabled under the Social Security Act, is supported by substantial

---

[12] The jobs included *inter alia*, usher/lobby attendant, hand washer, and food preparer. (Tr. 22, 178).

evidence and is free of legal error. Therefore,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)(c), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on June 30, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE