RECEIVED
IN LAKE CHARLES, LA
AUG 24 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KENNY R. RIGMAIDEN** | : | **DOCKET NO. 2:04 CV 02153** |
| **VS.** | : | **JUDGE MINALDI** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Before the court are plaintiff's Objections to the Report and Recommendation of the Magistrate [doc. 31]. The plaintiff raises the following objections:

(1) The ALJ failed to follow Social Security Administration (SSA) internal regulations concerning the disposition of a subsequent application while a claim is pending in either the District Court or before the Appeals Council (AC).

(2) The ALJ's unfavorable December 19, 2003 decision improperly reopened a favorable April 24, 2002 decision in violation of 20 C.F.R. § 416.1488. Also, the ALJ's decision was based upon incomplete evidence.

(3) The ALJ improperly discounted the testimony of the plaintiff's expert.

(4) The ALJ's step five determination that there are significant numbers of alternative jobs in the national economy is not supported by substantial evidence.

1

## FACTS

On March 12, 1998, plaintiff Kenny R. Rigmaiden ("Rigmaiden") filed an application with the Social Security Administration (SSA) seeking Supplemental Security Income benefits (hereinafter "the 1998 claim").[1] Rigmaiden alleged numerous physical and mental disabilities.[2] After Rigmaiden's claim was initially denied, he requested and received a hearing before an Administrative Law Judge (ALJ) on July 13, 2000.[3]

The ALJ found that Rigmaiden suffered from "mild mental retardation and residuals of back injury."[4] The finding of mental retardation relied, in part, upon a psychological evaluation by Dr. Jerry Whiteman who administered a WAIS-III IQ test to Rigmaiden.[5] Despite Rigmaiden's disabilities, the ALJ concluded that Rigmaiden was able to able to perform past relevant work and denied his claim.[6] After exhausting his administrative remedies, the plaintiff sought review by this court.[7]

By order of the court, signed by Judge Trimble and dated April 24, 2002, Rigmaiden's claim

---

[1] *See* Administrative Record, p. 15.

[2] *See id.* at 53-56/

[3] *Id.* at 52.

[4] *Id.* at 57.

[5] *Id.* at 55, 57.

[6] *Id.* at 57.

[7] See *Rigmaiden v. Barnhart*, 2:01-cv-00562.

was remanded to the SSA.[8] That judgment specifically directed the Commissioner of the SSA to conduct further proceedings with respect to plaintiff's work history and "whether there is evidence that Plaintiff was mentally retarded prior to age 22."[9]

Also on April 24, 2002, ALJ Salassi ruled in Rigmaiden's favor on a separate claim, originally filed by Rigmaiden on February 28, 2001 (hereinafter "the 2001 claim"). In his written decision, ALJ Salassi found "that mental retardation did manifest itself during the developmental period [prior to the age of 22]."[10] ALJ Salassi based his findings upon a more current report by Dr. Whiteman.[11] Dr. Whiteman's report, drafted in March 2001, confirmed his earlier diagnosis of mild mental retardation.

However, on December 19, 2003, in his written decision on the remanded 1998 claim, ALJ Pickett found that Rigmaiden was not mentally retarded.[12] In so finding, ALJ Pickett relied upon the expert opinion of Dr. Dilks, who evaluated Rigmaiden in July 2003. ALJ Pickett did not find Dr. Whiteman to be credible, suggesting that Whiteman is always used as an expert by the plaintiff's disability consultant, and that he always provides "an unusually liberal assessment...contrary to the weight of the evidence."[13]

The SSA's final administrative action on the 1998 claim was to deny review of ALJ Pickett's

---

[8] Administrative Record, p. 63.

[9] Administrative Record, 63.

[10] *Id.* at 30.

[11] *Id.*.

[12] *Id.* at 20.

[13] *Id.* at 20. ALJ Pickett also refers to Dr. Whiteman as "Dr. Whitehead."

3

decision, making it a final decision. In a letter to plaintiff's representative, the Appeals Council stated that ALJ Pickett's unfavorable decision in December 2003 vacated the favorable decision on the 2001 claim by ALJ Salassi.[14] Thus, in October 2004, Rigmaiden again sought judicial review of the SSA's denial of benefits.

## ANALYSIS

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636 (2006). "[T]he district court makes 'a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made'." *U.S. v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citing *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406 (1980) (emphasis omitted)).

Upon a *de novo* review of the administrative record, the court finds that the plaintiff's second objection is meritorious to the extent that ALJ Pickett relied upon an incomplete IQ test and failed to determine whether Rigmaiden's mental retardation began prior to age 22.

In assessing Rigmaiden's mental disabilities, it was well within ALJ Pickett's discretion to determine that Dr. Whiteman lacked credibility. "[T]he ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.'" *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). However, in relying upon the testimony of Dr. Dilks, ALJ Pickett failed to follow SSA

---

[14] *Id.* at 5.

regulations.

>20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 (D)(6)(c) states:
>
>> In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.

Dr. Dilks administered a Wechsler series test, the WAIS-III.[15] Indeed, a typical administration of the WAIS-III produces three IQ scores– Verbal, Performance, and Full scale IQ.[16] Dr. Dilks, however, only administered the verbal portion, claiming Rigmaiden was noncompliant when he attempted to administer the performance component.[17]

ALJ Pickett then relied upon this single, verbal IQ score, citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 (D)(6)(a) :

> [T]he results of standardized intelligence tests **may** provide data that help verify the presence of mental retardation.... However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the results are valid and consistent with the developmental history and the degree of functional limitation.[18]

While subsection (a) affords the ALJ some latitude, it is not an express grant to ignore subsection (c). As in *Ambers v. Heckler*, by failing to use the lowest of the *three* score, "[t]he Secretary has

---

[15] *See id.* at 93.

[16] *See* Gary Groth-Marnat, Handbook of Psychological Assessment 129-95 (4th ed. 2003).

[17] *Id.* at 18, 93.

[18] *Id.* at 20 (emphasis in original).

misapplied her own regulation." 736 F.2d 1467, 1470 (11th Cir. 1984).

Moreover, by reopening the case beyond the issues identified in the court's April 24, 2002 order, ALJ Pickett and the AC acted in direct contravention of this court's mandate. In the April 24, 2002 order, the SSA was directed to determine whether the plaintiff was mentally retarded prior to the age of 22. Implicit in this instruction is the court's finding that the plaintiff *is* mentally retarded. This finding is the law of the case and not subject to reconsideration by the ALJ on remand.[19] "The 'law of the case' doctrine...generally operates to preclude a reexamination of issues decided on appeal, either by the district court on remand or by the appellate court itself upon a subsequent appeal." *Conway v. Chemical Leaman Tank Lines, Inc.* 644 F.2d 1059, 1061 (5th Cir. 1981).

Furthermore, it is a settled principle of law that the agency is not free to disregard orders of the district court on remand. "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson,* 490 U.S. 877, 886, 109 S. Ct. 2248, 2254 - 55 (1989) (citations omitted).

One district court succinctly explained this "rule of mandate" in the context of a remand to the SSA as follows:

> Historically, the system has operated in hierarchical fashion with decisional power vested, in ascending order, in an [ALJ], the Appeals Council, the district court, the court of appeals, and the Supreme

---

[19] The Fifth Circuit, in *Loumar, Inc. v. Smith,* noted that "the law of the case doctrine is merely a '*rule of practice.*'" 698 F.2d 759, 762 (5th Cir. 1983) (emphasis in original). Nevertheless, where, as here, the rule of mandate works coordinately with the law of the case doctrine, the law of the case is binding upon the agency. "Principles of authority, however, do inhere in the 'mandate rule' that binds a lower court on remand to the law of the case established on appeal. The very structure of a hierarchical court system demands as much." 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice § 4778 (2006).

> Court. The Supreme Court overrules appellate court decisions, not the other way around. The court of appeals overrules decisions of the trial court, not the other way around. *And the district court overrules the Appeals Council, not the other way around. Ischay v. Barnhart*, 383 F. Supp.2d 1199, 1215 (C.D. Cal.,2005) (quoting *Holst v. Bowen*, 637 F. Supp. 145, 147-48 (E.D. Wash.1986)) (emphasis added).

In failing to heed the court's April 24, 2002 order, ALJ Pickett deviated from this well-established hierarchy, thereby causing this court to reconsider a settled issue of law and waste judicial resources. In addition, the AC's July 22, 2004 decision is improper to the extent that it premised the vacation of ALJ Salassi's favorable decision upon ALJ Pickett's findings.

Accordingly, plaintiff's second objection to the Report and Recommendation will be sustained. This matter will again be remanded for a determination as to whether Kenny R. Rigmaiden was mentally retarded prior to the age of 22. In making this determination, the Administrative Law Judge shall consider IQ scores in the manner prescribed by 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 (D)(6)(c).

Lake Charles, Louisiana, this ___24___ day of August 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE